UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIRGINIA STITT,

    Plaintiff,                                   Civil Action No. 05-60196

v.                                           HON. JOHN CORBETT O'MEARA
                                            U.S. District Judge
                                            HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Virginia Stitt brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding this case for rehearing and clarification.

**PROCEDURAL HISTORY**

        On November 19, 2002, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging an onset date of disability since July 20, 1997 (Tr. 47-49). After denial of her claim on September 9, 2002, Plaintiff filed a timely request for an administrative hearing,

conducted on June 4, 2004 in Flint, Michigan before Administrative Law Judge (ALJ) G. Roderic Anderson (Tr. 31-33, 202). Plaintiff, represented by attorney Robert MacDonald, testified. (Tr. 205-230). Mary Williams, acting as Vocational Expert (VE) also testified (Tr. 230-234). On June 23, 2004, ALJ Anderson found that Plaintiff was not disabled because although unable to perform any of her past relevant work, she retained the residual functional capacity (RFC) to perform a significant range of sedentary work (Tr. 22). On January 30, 2004 the Appeals Council denied review (Tr. 5-7). Plaintiff filed for judicial review of the final decision on August 23, 2005.

## BACKGROUND FACTS

Plaintiff, born September 24, 1955, was age 48 when the ALJ issued his decision (Tr. 17, 47). She received a high school diploma and previously performed assembly and sales work (Tr. 62). She alleges disability due to Carpal Tunnel Syndrome (CTS), anxiety, and depression (Tr. 61).

### A.     Plaintiff's Testimony

Plaintiff, separated, testified that she lived in Flint, Michigan with her daughter, 18, and another adult (Tr. 206). She stated that she stood 5' 5" and weighed 203 pounds (Tr. 206). She reported that her most recent full-time position was with Flint Community Schools as a community advocate (Tr. 207). She indicated that since being terminated from that position in July 1997, her work had been limited to a month-long stint in a part-time position for a legal aid organization (Tr. 207-208). She denied receiving Workers' Compensation, Unemployment Compensation, or Disability Benefits, reporting that she currently received

state aid (Tr. 209).

Plaintiff opined that she was disabled as a result of high blood pressure, heart palpitations, and memory problems (Tr. 210). She reported that her blood pressure condition, for which she took medication, caused stomach aches, nausea, and fatigue (Tr. 210). She testified that heart palpitations often interrupted her sleep, adding that her arms hurt and she experienced excessive sweating (Tr. 211). She testified that an irregular heartbeat also caused mental confusion (Tr. 211). She reported that walking and climbing uphill created chest pain (Tr. 211). She indicated that her condition was worsening, stating that recently, her episodes of heart problems had increased from three to four times a month to every morning upon awakening (Tr. 211). She approximated that each episode lasted approximately one hour (Tr. 212). In addition to heart palpitations, Plaintiff reported daily leg and ankle swelling as well as CTS (Tr. 212). She reported that she suffered from CTS primarily in her left arm, adding that she experienced "a little bit in the right also" (Tr. 213). She indicated that CTS created difficulty performing household chores and yard work (Tr. 213-214). She testified that Motrin provided partial relief from the numbness and tingling caused by CTS (Tr. 215).

Plaintiff alleged that in addition to physical ailments, she experienced anxiety and memory problems (Tr. 216). She stated that she had first experienced anxiety in 1988 while working as an assembler, attributing her current anxiety to "post traumatic job change" (Tr. 217). She testified that she had undergone counseling in the past with unsatisfactory results (Tr. 218). She stated that her present uninsured status kept her from seeking mental health

treatment (Tr. 218).

Plaintiff reported sporadic sleep habits, testifying that she arose anytime between 6:00 and 8:30 a.m., retiring between 10:00 p.m. and 1:00 a.m. (Tr. 219). She admitted that she continued to fix simple meals and wash dishes, but indicated that she spent most of her time "just sit[ting] around," adding that fatigue obliged her to take approximately three short naps each week (Tr. 219-221). She testified that she continued to experience depression, stating that she experienced crying jags approximately once a month (Tr. 221).

Plaintiff estimated that she could stand for a maximum of only 30 minutes in an eight-hour workday due to swollen ankles (Tr. 221). She maintained that the option of walking, in addition to standing, would not increase the amount of time she could spend on her feet (Tr. 222). She opined that she could not resume the type of work she performed for the school system due to anxiety and high blood pressure (Tr. 222). In response to questioning by the ALJ, Plaintiff asserted that she could not perform assembly work due to arm problems; hostess work as a result of "mental confusion"; and answering a telephone, due to hand numbness (Tr. 223). She estimated that she could sit for a maximum of 30 minutes without changing position and stand for five minutes (Tr. 24-25). She testified that she could lift a maximum of five pounds, but acknowledged that she retained the ability to lift a gallon of milk (Tr. 225). She denied vacuuming, sweeping, pushing, pulling, or grasping, adding that she relied her adult children to help her with household and grocery chores (Tr. 225). She reported that she could bend her legs, knees, and ankles at times when she did not experience swelling (Tr. 226). She indicated that she continued to bathe herself, but that her youngest

-4-

child fixed her hair (Tr. 226). She reported that she continued to drive occasionally, adding that she did so only at times her children were "not able to carry" her (Tr. 227). In response to questioning by the VE, Plaintiff stated that her work as a community advocate required her to travel to the homes of "in need" families, conduct interviews, and take notes (Tr. 229).

### B. Medical Evidence

#### 1. Treating Sources

In May, 1999, Plaintiff complained to B. Sayal, M.D., of tingling and numbness on the right side of her face, but denied heart palpitations (Tr. 122). Dr. Sayal reported that Plaintiff continued to experience hypertension and anxiety, noting that she would lose her health insurance coverage in one month (Tr. 122). One month later, Plaintiff sought treatment for post-nasal drip and suspected migraines (Tr. 121). In August, 1999 she complained to Dr. Sayal of numbness in her left big toe (Tr. 120). Dr. Sayal noted that Plaintiff's toe did not exhibit a history of any injury or discoloration (Tr. 120). In October, 1999 Plaintiff indicated that she had experienced diarrhea for the past two days, causing fatigue (Tr. 119). In December, 1999 Plaintiff complained of "a slight itching over the breast," revisiting Dr. Sayal the following month for a rash on her left thigh (Tr. 118). Plaintiff received prescriptions for Benadryl and Elocon cream (Tr. 118). Plaintiff's blood pressure reading was 112/70 (Tr. 118). Later the same month, Plaintiff sought treatment for "slight shortness of breath" and "a little cough" (Tr. 117). In February, 2000, Plaintiff sought treatment for a scratchy throat (Tr. 117). The next month, Plaintiff revisited Dr. Sayal after

experiencing body aches after returning from a trip to Tennessee (Tr. 116). Plaintiff sought treatment each month between July, 2000 and November, 2001 for a number of health complaints, including a stiff neck, dizziness, left wrist pain, right chest discomfort, postnasal drip, abdominal pain, constipation, breast pain, "slight pain and numbness" in her left forearm   (Tr. 108-115). July, 2001 blood tests showed a raised cholesterol count, but otherwise normal results (Tr. 109). In December, 2001, an EMG study showed mild median neuropathy at the wrist consistent with left CTS (Tr. 105). Plaintiff received a prescription for a left wrist splint and elbow pad and was advised to refrain from repetitive hand or wrist movements (Tr. 105). Plaintiff received a blood pressure reading of 148/91 in December, 2003 (Tr. 190).

In January, 2001, Plaintiff sought treatment for a sleep disorder (Tr. 168). Plaintiff reported to F. Khorfan, M.D., that she suffered from snoring, but reported minimal daytime somnolence (Tr. 167). Dr. Khorfan concluded that Plaintiff did not experience sleep apnea (Tr. 166). In April, 2001, Plaintiff told Dr. Khorfan that Flonase reduced her symptoms of postnasal drainage (Tr. 165). A mammogram performed in December, 2002 showed normal results (Tr. 185).

In January, 2003 Plaintiff underwent a psychological assessment which found that she experienced anxiety and mild depression (Tr. 169, 174). She alleged stress resulting from marital problems, telling her examiner that she currently took Zantac and blood pressure medication (Tr. 169-170). She demonstrated guarded speech and generally distrustful behavior, but reported a good relationship with her children and interests including exercise

at the YMCA and computer research (Tr 171-172). She received a GAF score of 60[1] (Tr. 174).

An October, 2003 cardiology report by R. Misra, M.D., indicated a blood pressure reading of 170/80 (Tr. 189). Treating notes indicate that Plaintiff's lungs were clear (Tr. 189). Thyroid function tests showed results within normal ranges (Tr. 189). A January, 2004 radiology report of Plaintiff's pelvis also showed normal results (Tr. 194).

### 2. Consultive Opinions

In June, 2002, Internist Martha Pollack, M.D., performed an examination of Plaintiff on behalf of the Social Security Administration (SSA) (Tr. 127-129). She reported the absence of a heart murmur, noting further that Plaintiff's heart did not appear enlarged (Tr. 128). She found that Plaintiff experienced a diminished grip bilaterally but did not display joint instability, noting a normal range of motion (Tr. 128). She concluded that Plaintiff experienced a history of congestive heart failure, anxiety, depression, high blood pressure, and "[p]ossible bilateral carpal tunnel syndrome" (Tr. 129).

The next month, a Residual Functional Capacity Assessment of Plaintiff's medical records found that Plaintiff retained the ability to lift 20 pounds occasionally; 10 pounds frequently; stand, walk, or sit for approximately six hours in an eight-hour workday; a limited ability to push or pull with the upper extremities; and an unlimited ability to push or pull with

---

[1] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

the lower extremities (Tr. 131). The report found further that Plaintiff was limited to frequent climbing, balancing, stooping, kneeling, crouching, and crawling, but did not experience manipulative, visual, or communicative limitations (Tr. 133-134). The evaluation precluded Plaintiff from all exposure to vibrating tools, but did not contain further environmental restrictions (Tr. 134).

In August, 2002, Leonard Balunas, Ph.D., performed a mental examination of Plaintiff on behalf of SSA (Tr. 138-143). Plaintiff reported ongoing depression, along with a fear of elevators, snakes, and "nighttime," but denied current suicidal ideation (Tr. 138). In addition to mental health problems, she reported CTS and high blood pressure (Tr. 139). She indicated that she enjoyed a good relationship with her four children, two of whom continued to live with her, adding that she enjoyed attending her adult daughter's basketball games at the "Palace," a nearby sports/entertainment complex (Tr. 139). Plaintiff alleged that her physical condition prevented her from gardening, but she continued to perform errands and visit relatives on a regular basis, reporting that she was bored at home (Tr. 139-140). Dr. Balunas found that Plaintiff exhibited good self-esteem and "clear, coherent, and relevant" speech, noting further that she did "not appear to be trying to either exaggerate or minimize her difficulties" (Tr. 140). He concluded that Plaintiff experienced a dysthymic disorder and a fear of elevators, assigning her a GAF of 60 (Tr. 142).

A Psychiatric Review Technique performed in September, 2002 found that Plaintiff experienced an affective disorder and anxiety, resulting in mild limitations in activities of daily living and social function as well as moderate difficulties maintaining concentration,

persistence, or pace (Tr. 147, 149, 154). A Mental Residual Functional Capacity Assessment performed the same month found that Plaintiff did not experience any significant occupational limitations due to her condition, concluding however, that her "mild depression" would create moderate limitations in her ability to maintain concentration for extended periods (Tr. 161). The report stated that Plaintiff retained the ability to "understand, remember, and carry out simple instructions," finding her capable of unskilled work (Tr. 161).

### 3. Material Submitted Subsequent to the Administrative Decision[2]

A July, 2004 Residual Functional Capacity Statement by Paul Musson, M.D., concluded that as a result of moderately severe cervical radiculopathy and moderately severe CTS, Plaintiff could sit, stand, or walk for a total of half an hour in an eight-hour workday (Tr. 197). Dr. Musson further concluded that Plaintiff required the option of sitting, standing

---

[2] Pursuant to *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993), material submitted to the Appeals Council subsequent to the administrative decision cannot be considered by the Court. In *Cotton*, the court held that where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.,* 2 F.3d at 695-96. Sentence Six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

Although Plaintiff does not request a Sentence Six remand for consideration of the post-decision evidence, I note that the newer records do not present grounds for a remand. Dr. Musson's conclusions, unaccompanied by any treatment notes or objective tests, suggest a level of impairment which stands completely unsupported by any other medical source.

or lying down at her discretion, along with a prohibition on lifting more than five pounds on a limited basis (Tr. 198). The same report concluded that Plaintiff was precluded from all grasping, reaching, pushing, pulling, and fine manipulations (Tr. 199)**.**

### C.     Vocational Expert Testimony

VE Mary Williams classified Plaintiff's previous work as a family advocate as skilled at the light exertional level (Tr. 97, 230). She stated that Plaintiff's transferable skills included record-keeping, writing reports, problem solving, and the ability to confer information to others (Tr. 230). She testified that if Plaintiff's allegations of limitations were fully credited, she would be unable to perform her past relevant work due to heart palpitations and her professed inability to stand for more than 30 minutes (Tr. 231). The ALJ then posed the following question to the VE:

> "Okay. Let me ask you about a hypothetical worker the same age of Ms. Stitt – of 42 years – with the same educational background of high school education. Able to do skilled work, with the same transferable skills as Ms. Stitt. Able to work at a sedentary level. No prolonged walking or standing. No repetitive pushing or pulling. And no climbing of stairs or ladders. No crawling, stooping, squatting, or kneeling. No repetitive gripping or grasping wrist movements. Only occasional handling and fingering. No operation of machinery or motor vehicles, working extremes, hot, cold, or humidity, and no prolonged writing. Also no requirement to perform greater than simple tasks requiring one, two, or three steps. Would there be work in the national or regional economies this worker would be able to perform?"

(Tr. 232).

The VE replied that the hypothetical individual would not be able to perform any jobs in the skilled category, but could performed a range of unskilled, sedentary jobs found in regional economy, including the positions of surveillance system monitor (1,570 jobs),

referral information clerk (1,780), and visual inspector (1,780) (Tr. 232). She stated that if the same individual were obliged to recline, rest, nap, or was unable to sustain concentration as a result of chronic pain, no gainful employment would be available (Tr. 232-233). She indicated that her testimony was consistent with the Dictionary of Occupational Titles (Tr. 233).

**D.     The ALJ's Decision**

Citing Plaintiff's medical records, the ALJ found that Plaintiff suffered from the severe impairments of dysthymia, anxiety disorder, carpal tunnel syndrome, and hypertension (Tr. 18). The ALJ found that although Plaintiff's impairments were considered collectively severe within the meanings of the regulations, none were sufficiently severe to meet or medically equal one of the listed impairments in Appendix 1, Subpart P., Regulations No. 4 (Tr. 22).

Adopting the job findings of the VE, ALJ Anderson found that although Plaintiff could not perform any of her past relevant work, she possessed the RFC to perform a significant range of unskilled sedentary work allowing for:

> "Occasional handling, fingering or feeling, but does not require any prolonged standing or walking, no repetitive pushing/pulling and no stair or ladder climbing. The claimant should also avoid work activity that requires any crawling, stooping, squatting, prolonged writing, the operation of machinery or motor vehicles or exposure to unprotected heights"

(Tr. 18). The ALJ found Plaintiff's allegations of disability only partially credible, noting that a June, 2002 examination established that she could squat, hop, perform heel/toe maneuvers, as well as displaying a normal range of motion in all joints (Tr. 19). In addition,

the ALJ cited a January 22, 2003 psychological assessment which reported (contrary to Plaintiff's testimony at the hearing) that Plaintiff demonstrated normal memory skills (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

-12-

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

## **ANALYSIS**

Plaintiff argues that the hypothetical question posed by the ALJ does not encompass all of her limitations. *Plaintiff's Brief* at 11-15. In addition, she maintains that the job findings made by the VE in response to the hypothetical, later adopted in the administrative decision, do not constitute substantial evidence. In particular, she argues that the hypothetical limitations did not reflect the ALJ's finding, contained in his decision, that she suffered from *marked* deficiencies of concentration, persistence, or pace. *Id.*; Tr. 20.

Under *Varley v. Secretary of HHS*, 820 F.2d 77,7 779 (6th Cir. 1987), a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's

physical and mental impairments. More recently, in *Webb v. Commissioner of Social Sec.* 368 F.3d 629 (6th Cir. 2004), the court rejected the proposition that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question. Nonetheless, the *Webb* court acknowledged that "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632; quoting *Varley, supra,* 820 F.2d at 779. Generally, a failure to account for pacing deficiencies constitutes reversible error. *See Bankston v. Commissioner*, 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000).

On one hand, because Plaintiff does not present a particularly strong case for benefits, this Court is reluctant to remand on the basis of purely technical errors. "[W]here remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 547 (6th Cir. 2004), *citing NLRB v. Wyman-Gordon,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)(plurality opinion). I note further that the ALJ's finding Plaintiff experienced *marked* limitations of concentration, persistence, and pace stands contrary to the September, 2002 Psychiatric Review Technique conclusion that Plaintiff experienced those same limitations only to a *moderate* degree (Tr. 20, 161). Moreover, the same paragraph of the decision otherwise adopts the September, 2002 "B" criteria findings *verbatim*, suggesting that the ALJ, perhaps working from a template, neglected to replace "marked" with "moderate" deficiencies.

On the other hand, even though the ALJ's finding that Plaintiff experienced marked

-14-

concentrational difficulties appears inconsistent with the 2002 review as well as the rest of the administrative decision and the transcript evidence as a whole, it would be improper to infer that the ALJ's finding is merely a typographical error. Rather, the Court must assume that the ALJ meant what he said. Accordingly, we will proceed on the basis that the "B" criteria findings should be accepted as submitted, that is, that the ALJ found "marked" deficiencies. Given that assumption, the ALJ's conclusion becomes problematic for other reasons.

Contrary to the requirements set forth in *Varley, supra*, the hypothetical question posed at the hearing cannot be construed to encompass "marked" deficiencies in concentration, persistence, and pace. First, unlike moderate concentrational difficulties, marked limitations are deficiencies which would "interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).[3] Although the Step Three finding that Plaintiff experienced marked deficiencies in concentration, persistence, and pace do not mandate a disability finding, pursuant to *Varley,* the severity of the impairments must be reflected in the hypothetical question. *See also, Edwards v. Barnhart* 383 F.Supp.2d 920, 927 (E.D.Mich.,2005) ("A response to a flawed hypothetical question is not substantial evidence

---

[3]Of course, a finding of one marked limitation under the "B" criteria, in and of itself does not direct a disability finding. The regulation requires, depending on the particular listing, that either two or three marked deficiencies exist in order for disability to be found at Step Three. Rather, the question at hand is whether the hypothetical question posed at Step Five of the analysis wholly accounted for her limitations as found by the ALJ at Step Three.

and cannot support a finding that work exists which the Plaintiff can perform.") I find that the hypothetical question, which acknowledged Plaintiff's mental impairments only to the extent that it limited to her to "simple tasks requiring one, two, or three steps" (Tr. 232) was not sufficient to encompass marked limitations, deemed by the regulation to "interfere seriously" with her occupational functions. *See also Evans v. Apfel,* 1999 WL 373788, 9 (D.Or.,1999) ("The VE responded that if such a person has marked deficiencies in concentration, persistence and pace, that alone would prevent him from finding that the person could perform any jobs.)

In addition, evidence supports Plaintiff's argument that the hypothetical question was interpreted by the VE to refer to only moderate, not marked limitations. At the hearing, after the VE made his job findings, Plaintiff's attorney and the VE engaged in the following exchange:

> Attorney: "The jobs identified in response to the Judge's second hypothetical, surveillance system monitor, referral information clerk, and visual inspector, those require a certain amount of alertness and the ability to concentrate. Is that correct?"
>
> VE: "Yes"
>
> Attorney: "So if an individual was moderately limited in the ability to maintain attention and concentration for an extended period of time, that would impose a problem in performing those jobs?"

The VE, apparently interpreting the term "moderate" as a term of art employed in the "B" criteria, indicated that the above jobs were not incompatible with moderate limitations. Both the attorney's question and the VE's answer demonstrate that both assumed the

hypothetical question implied moderate rather than marked concentrational deficiencies referred to in the administrative decision. Accordingly, the job findings, which were adopted by the ALJ, are premised upon a flawed hypothetical question and cannot constitute substantial evidence.

An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration,* 55 Fed.Appx. 333, 339, WL 236419, 5 (6th Cir. 2003) (*quoting Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995)) *See also Hardman v. Barnhart,* 362 F.3d 676, 679 -680 (10th Cir. 2004). Likewise, in the instant case, the Court cannot determine on what basis the ALJ found that Plaintiff experienced marked concentrational deficiencies. The ALJ's "path of reasoning" was further obscured by a hypothetical question which failed to acknowledge such a level of disability. Although *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001), rejects the notion that a hypothetical question must contain talismanic language or a verbatim list of a plaintiff's "B" criteria deficiencies, even the most liberal reading of the hypothetical question cannot be interpreted to encompass marked mental limitations. Despite the fact that Plaintiff does not present a strong case for benefits - indeed, the record is replete with indications to the contrary - a valid job finding is absolutely critical to the ultimate disability finding and therefore a remand for clarification is necessary.

## **CONCLUSION**

I therefore recommend that Plaintiff's Motion for Summary Judgment be GRANTED and that Defendant's Motion for Summary Judgment be DENIED, remanding this case for

rehearing and clarification.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: May 4, 2006

CERTIFICATE OF SERVICE

-18-

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 4, 2006.

                                          S/Gina Wilson
                                          Judicial Assistant